(4 Misc. Rep. 305.)

ESCHMANN v. ALT et al.

(Supreme Court, Special Term, New York County.  June 21, 1893.)

FORECLOSURE OF MORTGAGES—PARTIES.
    The owner of mortgaged land devised it to his widow for life, re-
mainder to his children, with a proviso that, on the death of any
child, the share of the one dying should pass to his children. *Held*, that
the only necessary parties to an action to foreclose the mortgage were the
widow and the children of testator living at the commencement of the
action, and it was not necessary to join the children of a living child.

Action by Annie Eschmann against Adam Alt and others to re-
deem land sold under a mortgage.  Judgment for defendants.

Thornall, Squires & Pierce, for plaintiff.
L. S. Goebel, for defendants.

PATTERSON, J.  The complaint in this action contains allega-
tions of fraud against the defendant Alt and Mr. Goebel, an at-
torney, of a very serious character; but, on an examination of the
record preparatory to a decision of the case, I find that the counsel
for the plaintiff has distinctly withdrawn those charges, and they
are now eliminated, and a decision is thus very much simplified.
The plaintiff sues to redeem a fractional interest claimed to be-
long to her in certain premises which were owned by her grand-
father, and under the following state of facts:  Edward Dalton,
the grandfather, was the owner of certain premises which were
mortgaged to the Bowery Savings Bank.  He died, and by his will
such premises were devised to his widow for life, with remainder
to his children, with a further provision that, in case of the death
of any child, the share of the child so dying should pass to the
children of such deceased child.  After the death of the testator,
and while the mortgage to the Bowery Bank was outstanding, and
in view of the imminence of a foreclosure of that mortgage, ap-
plication was made by Mrs. Dalton, the widow of the testator, to
Mr. Goebel, an attorney, to find somebody who would relieve the
estate from the immediate pressure of such foreclosure; and an
arrangement was entered into by which Mr. Goebel procured Mr.
Alt, one of the defendants, to take an assignment of the mortgage,
and to foreclose it, he (Alt) to be substituted in the place of the
Bowery Savings Bank, Goebel acting for Mr. Alt.  The assignment
was duly made, and Mr. Alt acquired a clear title to the mortgage
of the bank, and, without any fraud or wrong, he became the
owner of that mortgage by payment of the full consideration, but,
doubtless, as subsequent events showed, intending the transaction
to be for the benefit of Mrs. Dalton and her children, so far as it
would be consistent with his interest in advancing the money.
    The first ground upon which the plaintiff places her right to re-
deem this fractional interest is that in the foreclosure of the
Bowery Savings Bank mortgage, thus assigned to Mr. Alt, the chil-
dren of John Dalton, the father of the plaintiff, were made parties

to the suit, but that they were not properly served with process, and that other irregularities existed in connection with the proceedings which rendered the decree in that foreclosure suit (in the court of common pleas for the city and county of New York) void. With reference to that branch of the case, viz. the first foreclosure suit, I see no reason why this plaintiff can claim a right to redeem. The situation of the case was simply this: Mr. Alt became the assignee of the mortgage of the Bowery Savings Bank. He advanced his own money, and, although that foreclosure suit was intended indirectly for the benefit of the Dalton family, there was nothing in any agreement which, by its terms or conditions, prevented his taking the title. On the contrary, it was intended that he should take the assignment of the mortgage, foreclose it, take title, and, being the owner thereof, convey the fee of the property for the benefit of the Dalton family; and the subsequent history of the case shows that this was done.

The question now arising on this first foreclosure is, who were necessary parties defendant to it? As said before, the widow and the children of the testator were made parties, and some of his grandchildren; and the particular ground upon which this first foreclosure suit is assailed is that those grandchildren were not properly served with process. I am clearly of the opinion that, under the devise contained in the will of the testator, it was not necessary to bring in the grandchildren as parties, because the widow and the children of the testator were in being at the time the foreclosure suit was brought, and they were all served with process. The only ground upon which there can be an assault made upon this first foreclosure suit would be that parties necessary to the suit were not served in the manner required by law. It seems to me to be entirely clear that the life tenant—i. e. the widow—and those in whom a remainder vested were the only parties who were, as against the mortgage, necessary. It is a rule of law that any one interested in the reversion or in the remainder and in the equity of redemption, must be made a party to the suit; but that does not, in my judgment, compel a mortgagee, seeking to enforce his mortgage, to find out who would be entitled to interests or estates in case of their passing over by reason of such a devise as that contained in this will. So far as this first foreclosure suit is concerned, it may be conceded that the service or intended service on the children of John Dalton was improper; but the point I desire to emphasize with respect to that first foreclosure suit is that, while the children of John Dalton were made parties, they were not necessary parties, and that, when the mortgagee brought into the suit all those who were then in being, and who were entitled to what must be conceded to be vested remainders, it gave him the right to foreclose, and would have given him the right to foreclose as against all interests. The testator's widow and children having been made parties to the suit, it is indifferent as to who might succeed them in interest, so long as the whole equity of redemption as then owned was cut off. So, while it is not

strictly accurate ·to say that the plaintiff takes "under her father," it is plain that the rights and remedies· of a mortgagee to fore-·close the mortgage are not affected by the terms of the will so as to compel him to examine and find out who might become (possibly) contingently owners of undivided interests in the land, so long as those in being, and who are entitled to the whole estate, are made parties to the action. This 'is sufficient to disclose of the first foreclosure suit, although a great many irregularities are suggested concerning it, with regard to the times at which and the places where orders were made in the action pending in the court of common pleas; as for instance, orders made by judges of the su-preme court, in the second judicial district, and not by a judge of the court of common pleas, and the differences in dates, and other apparent blunders that were made in the foreclosure suit in that first action. That action was conducted in a most irregular and unsatisfactory way; but, at the same time, I find nothing in those irregularities to authorize a decree 'in this case that the plaintiff should be entitled to redeem.

But, regardless of that, and coming down to the second fore-closure suit involved in this case, I find that the facts are these: 'Mr. Alt and Mr. Goebel, after the title was taken by Mr. Alt on the foreclosure suit in the first action in the court of common pleas, in pursuance of some arrangement by which Mrs. Dalton and her children were to be benefited, caused the property to be con-·veyed to Mrs. Dalton, as executrix. She gave back a mortgage on the property to Mr. Alt. The deed made to her was as exec-utrix, which, of course, means nothing as affecting tenure. The designation of Mrs. Dalton in the deed as "executrix" is descriptio personae, and nothing else. It is scarcely worth while to cite au-thorities on this subject, but, inasmuch as the deed was given to her by that description, and the mortgage back was given to Mr. Alt for money which he actually and honestly advanced, and which there can be· no doubt was actually paid by him, so far as the legal effect of the transaction is involved, they stood in this relation, viz.: 'Mr. Alt conveyed the property to Mrs. Dalton as executrix. Mrs. Dalton gave back the mortgage. That mortgage was not paid within the time limited by its terms, and the right to foreclose it accrued to Mr. Alt. He did foreclose it, and it was bought in. Tnere was no trust or condition by which his right to foreclose was to be delayed beyond the stipulation term of the mortgage. Now, in that second foreclosure suit the· parties defendant were not only Mrs. Dalton, the mortgagor, but her children and certain grandchildren. That seems to be a recognition of some arrange-ment on the part of Mr. Alt by which the whole Dalton family was interested in the land, and, by making the grandchildren par-ties to the suit, he may have acknowledged they had an interest in the land. That would leave the case in this position: That he (Alt) conveyed the land to Mrs. Dalton for the benefit of herself and her children and grandchildren, but at the same time took back a mortgage to ·cover his own advances, and which, from all

I can see in the case, he had a perfect right, within the proper terms thereof, to enforce. There was nothing in the arrangement that would limit him to any time within which he might enforce that mortgage on default; and when he foreclosed he was acting entirely within his apparent legal right, because he was not bound to withhold foreclosure for any longer period than that which was specified in the terms of the mortgage.

That brings us down to the consideration of the concrete question of what should have been done, and what was properly done, in the foreclosure of the second mortgage thus given. As said before, all elements of fraud are eliminated from the case as to the second mortgage, and that appears from the concession made upon the trial, and contained in the stenographer's minutes. With all considerations of fraud out of the case, it is perfectly clear that the whole thing comes to a question of regularity respecting the service of the summons (in the foreclosure of the second mortgage) upon the infants and the mother of the infants, so that they would be bound by such service. Respecting this, I must say (assuming that Alt recognized and acknowledged, by making them parties, that the grandchildren were interested in the land) that I have been seriously embarrassed by the state of the record. If service was not made in the way provided by law upon the infants, or the person who was entitled to be served with the summons in a case of this kind, I should be compelled to allow the plaintiff's claim to prevail, provided the suit were properly constituted with reference to a redemption of the mortgage. But, after mature reflection, I must say that I cannot adopt the view of the plaintiff that the service, even if it was necessary, was not made. It is a very serious question, and I have considered it with care and solicitude. The facts are these: One of the witnesses swears that the service was made, and that he duly made it; but the infants declare, and their mother declares, that they were not served, and that she was not served for them. So many years have elapsed that I am inclined to accept the testimony of this witness as to the service; for I think that a lawyer would be more likely to have a better memory in a case of this kind than infants and women (evidently ignorant people) whose interest it would be to set aside a title, and give them an opportunity to come in and repossess themselves of that property of which they were dispossessed. I admit that this is a very close case on the testimony as it stands, if the pending question is at all important; but, after reading the record, remembering the deportment of these witnesses on the stand and their general demeanor, and the interest they have in the case, I must say that, notwithstanding all the blunders and all the awkwardness of the procedure in these cases, and the failure of the attorney to file proper affidavits of service, I believe that these children were properly served, and that it would not be in the interest of justice to divest a title on such testimony as appears here, particularly as it is shown that the defendant Alt paid the full consideration for what he received. Therefore I have reached the

conclusion that the complaint should be dismissed, and judgment should be ordered for the defendant, with costs, but, under the circumstances, an extra allowance will not be granted.